TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Road, Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Dana Jaye Bal, Donald Michael Williams, *on behalf of themselves and all others similarly situated,*

Plaintiffs,

vs.

Hyundai Motor America,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT FOR:**
1. **Unjust Enrichment**
2. **Breach of Implied Warranty under Texas Law**
3. **Breach of Express Warranty under Texas Law**
4. **Violation of the Texas Deceptive Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.***
5. **Breach of Implied Warranty under Missouri Law**
6. **Breach of Express Warranty under Missouri Law**

**DEMAND FOR JURY TRIAL**

Case No.                                                              CLASS ACTION COMPLAINT

1

2    Plaintiffs Dana Jaye Bal and Donald Michael Williams ("Plaintiffs") hereby

3    brings this Class Action Complaint against Defendant Hyundai Motor America

4    ("Defendant" or "Hyundai").  Plaintiffs seek relief for themselves and classes of

5

6    similarly situated Texas and Missouri consumers as set forth herein because at the

7    time of sale, the Class Vehicles contained defective tow hitch wiring harness modules

8    that cause the vehicles to catch on fire, which Hyundai failed to repair within a

9

10   reasonable period of time.

11                          **INTRODUCTION**

12       1.      Hyundai sold Plaintiffs and class members defective 2020-2022 Hyundai

13   Palisade vehicles (the "Class Vehicles") that that contain tow hitch wiring harness

14

15   modules that catch on fire.

16       2.      Hyundai began selling the Class Vehicles in the summer of 2019 as a

17   2020 model-year vehicle.  In promotional materials,[1] Hyundai boasted that the top-of-

18

19   the-line Palisade has 5,000 pounds of towing capacity and a trailer sway control.   To

20   take advantage of this towing capacity, Plaintiffs and class members each paid an

21

22   additional amount of approximately $475-750 for an optional tow hitch and tow

23   wiring harness module accessories, the latter of which is necessary to operate the

24   trailer's turn signals and brake lights.

25

26

27

28

---

[1] https://secure.viewer.zmags.com/publication/d49ef13d#/d49ef13d/2 (Last visited Jun. 13, 2023).

Case No.                                                        CLASS ACTION COMPLAINT

3.      The ability to tow was the reason why Plaintiffs and other class members decided to buy or lease the Class Vehicles over the competition.

4.      However, the Class Vehicles' tow wiring harness modules contain one or more defects causing the modules to suffer from an electrical short circuit and catch fire ("Tow Harness Module Defect").  In an August 22, 2022 letter to the National Highway Traffic Safety Administration issuing a recall, Hyundai admitted that "Debris and moisture accumulation on the tow hitch harness module printed circuit board (PCB) may cause an electrical short, which can result in a fire" and that "[a] fire while parked or driving can increase the risk of injury."[2]

5.      Hyundai initially directed the Class Vehicles' owners and lessees to park their vehicles outside and away from structures and to return their vehicles to Hyundai dealerships to implement an interim fix: remove a fuse to cut the power to the tow wiring harness module.  But this merely disables rather than repairs the tow wiring harness modules; without power supplied through the tow hitch wiring harness module, the turn and brake signals do not work.  As a result, tens of thousands of Class Vehicles that were equipped with the optional tow package can no longer use their vehicles to tow, as the tow package has been rendered useless due to the "fix."

6.      Hyundai has failed to repair or replace the defective tow wiring harness modules in Class Vehicles within a reasonable time.  As a result, many Class Vehicle

---

[2] https://static.nhtsa.gov/odi/rcl/2022/RCAK-22V633-7960.pdf (last visited June 12, 2023).

Case No.                                                                           CLASS ACTION COMPLAINT

owners have been forced to pay for after-market solutions to restore their cars' ability to tow.

7. In May 2023, more than eight months after publicly admitting to the Defect and starting its campaign to remove tow wiring harness module fuses, Hyundai claimed to dealers and owners that a permanent fix for the Tow Harness Module Defect was available. However, Class Vehicles' owners continued to report that when they contacted Hyundai dealerships to schedule a repair, they were told there were no repairs available as Hyundai had not yet supplied dealers with replacement parts.

8. Moreover, the recall does not provide Plaintiffs or class members with adequate relief. Indeed, aside from providing another belated repair attempt, Hyundai has not offered to compensate Class Vehicles' owners for the diminished value of the vehicles due to the defect or for their loss of use damages arising from the inability to tow, nor has it offered to reimburse owners or lessees for any out-of-pocket expenses.

9. Hyundai's sale of the defective Class Vehicles and failure to repair within a reasonable amount of time constitute a breach of its express warranty as well as the implied warranty of merchantability and gives rise to a claim for unjust enrichment. To remedy Hyundai's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Hyundai.

Case No.                                                              CLASS ACTION COMPLAINT

# **PARTIES**

10.     Plaintiff Dana Jaye Bal ("Plaintiff Bal" or "Ms. Bal") is an adult individual residing in Gaithersburg, Maryland.

11.     Plaintiff Donald Michael Williams ("Plaintiff Williams" or "Mr. Williams") is an adult individual residing in Wentzville, Missouri.

12.     Defendant Hyundai Motor America ("Hyundai") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.  Hyundai Motor America designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California.  Hyundai Motor America is the warrantor and distributor of the Class Vehicles in the United States through its network of dealers.  Money received from the purchase of a Hyundai vehicle from a dealer flows from the dealer to Hyundai Motor America.

13.     At all times herein mentioned, Hyundai designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the tow hitch wiring harness module for the Class Vehicles, including for the vehicle operated by Plaintiffs.  Hyundai also reviews and analyzes warranty data submitted by Hyundai's dealerships and authorized technicians in order to identify defect trends in

vehicles.  Upon information and belief, Hyundai dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decides to audit the dealership.  Hyundai uses this information to determine whether particular repairs are covered by an applicable Hyundai warranty or are indicative of a pervasive defect.

14.     Hyundai also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Towing Harness Module Defect.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Class Members and Hyundai are citizens of different states.

16.     Personal jurisdiction and venue are proper in this District as Defendant is headquartered in this District.

Case No.                                                                              CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I.    Dana Jaye Bal

17.    On August 1, 2020, Ms. Bal purchased a new 2020 Hyundai Palisade, Vehicle Identification Number KM8R44HEXLU167946 (hereafter the "Bal Vehicle") from Red McCombs Hyundai Northwest in San Antonio, Texas, an authorized Hyundai dealership (hereinafter "McCombs Hyundai").

18.    Ms. Bal regularly uses trailers to move furniture and personal belongings and the Class Vehicles' ability to tow was an important factor in her decision to purchase a 2020 Hyundai Palisade.  Prior to purchasing the 2020 Hyundai Palisade, Ms. Bal researched the vehicle by looking at Hyundai's website.  Based on Hyundai's representations, Ms. Bal was led to believe that the 2020 Hyundai Palisade with its advertised towing ability was the right choice to tow a trailer, and Ms. Bal purchased the vehicle with the tow hitch and tow hitch wiring harness module installed.

19.    Prior to the purchase, McCombs Hyundai assured Ms. Bal that the Bal Vehicle was accompanied by Hyundai's New Vehicle Limited Warranty.

20.    In its New Vehicle Limited Warranty, Hyundai promised a "[r]epair or replacement of any component originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Manufacturing Mexico (KMM) or Kia Motors Manufacturing Georgia (KMMG) that is found to be defective in material or workmanship under normal use and

7

maintenance" during "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first."

21.    In addition, under its New Vehicle Limited Warranty, Hyundai covers "repair or replacement of any Hyundai Genuine Replacement Part or Accessory supplied from Hyundai Motor America which is found to be defective in material or workmanship under normal use and maintenance."

22.    On November 11, 2022, when the Bal Vehicle odometer read 35,591 miles, Ms. Bal brought her vehicle to Fitzgerald's Lakeforest Hyundai-Subaru in Gaithersburg, Maryland, an authorized Hyundai dealership (hereinafter "Fitzgerald Hyundai") for service.  During that visit, Fitzgerald Hyundai informed Ms. Bal that Hyundai had recalled the tow wiring harness module because it was at risk of catching on fire and told her that Fitzgerald Hyundai performed the recall on the Bal Vehicle. Acting on Hyundai's instruction, Fitzgerald Hyundai removed the fuse to cut power to the tow wiring harness module, thus disabling the Bal Vehicle's ability to tow.

23.    On July 3, 2023, Ms. Bal brought her vehicle for a scheduled service appointment to Fitzgerald Hyundai.   During the visit Fitzgerald Hyundai told Ms. Bal that parts to perform the Tow Harness Module Defect repair were available and that it completed the Defect repair.  However, despite its claim to the contrary Fitzgerald Hyundai did not repair the Tow Harness Module Defect during that visit and the Bal Vehicle still was unable to tow.

Case No.                                                    CLASS ACTION COMPLAINT

24.     On May 24, 2024, Ms. Bal brought her vehicle for another scheduled service appointment to Fitzgerald Hyundai.   During the visit Fitzgerald Hyundai told Ms. Bal that parts to perform the Tow Harness Module Defect repair were not available and as a result it could not complete the Defect repair.  Ms. Bal then informed the dealer that it previously advised her the Defect was repaired, she needed to use her vehicle's towing capabilities the following day and asked the dealer whether she could tow.  In response, Fitzgerald Hyundai assured Ms. Bal that she could tow.  In fact, the Tow Harness Module Defect remained unrepaired and the Bal Vehicle still was unable to tow.

25.     The next day, on May 25, 2024, Ms. Bal rented a U-Haul trailer to move furniture form Pennsylvania to Maryland.  However, when installing the trailer the trailer lights failed to illuminate due to the Defect.  As a result, U-Haul refused to release the trailer to her.  Instead, Ms. Bal was forced to delay her trip and purchase a fuse from a nearby store in order to restore power to the tow wiring harness module.

26.     On June 6, 2024, Ms. Bal, through her counsel, sent a letter to Hyundai, advising it that the Bal Vehicle suffered from the Tow Harness Module Defect and that Ms. Bal was denied a repair under Hyundai's warranty.

27.     It was not until June 18, 2024, eighteen months after Fitzgerald Hyundai disabled the Bal Vehicle's ability to tow, when Fitzgerald Hyundai repaired the Tow Harness Module Defect in the Bal Vehicle.

Case No.                                                                CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    Donald Michael Williams

28.    On June 12, 2021, Mr. Williams purchased a new 2021 Hyundai Palisade, Vehicle Identification Number KM8R4DHE5MU316300 (hereafter the "Williams Vehicle") from St. Charles Hyundai in St. Peters, Missouri, an authorized Hyundai dealership (hereinafter "St. Charles Hyundai").

29.    Mr. Williams needed a vehicle capable of towing a fishing boat and the Class Vehicles' ability to tow was an important factor in his decision to purchase a 2020 Hyundai Palisade.  Prior to purchasing the 2021 Hyundai Palisade, Mr. Williams researched the vehicle by looking at Hyundai's website.  Based on Hyundai's representations, Mr. Williams was led to believe that the 2021 Hyundai Palisade with its advertised towing ability was the right choice to tow a fishing boat, and at the time of Williams Vehicle purchase Mr. Williams paid St. Charles Hyundai money to have a Hyundai genuine tow hitch and tow hitch wiring harness module installed in his vehicle.

30.    Prior to the purchase, St. Charles Hyundai assured Mr. Williams that the Williams Vehicle was accompanied by Hyundai's New Vehicle Limited Warranty.

31.    In its New Vehicle Limited Warranty, Hyundai promised a "[r]epair or replacement of any component originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Manufacturing Mexico (KMM) or Kia Motors Manufacturing Georgia (KMMG)

10

that is found to be defective in material or workmanship under normal use and maintenance" during "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first."

32.    In addition, under its New Vehicle Limited Warranty, Hyundai covers "repair or replacement of any Hyundai Genuine Replacement Part or Accessory supplied from Hyundai Motor America which is found to be defective in material or workmanship under normal use and maintenance."

33.    In the Fall of 2022 Mr. Williams brought his vehicle to St. Charles Hyundai for service.  During that visit, St. Charles Hyundai informed Mr. Williams that Hyundai had recalled the tow wiring harness module because it was at risk of catching on fire and told him that St. Charles Hyundai performed the recall on the Williams Vehicle.  Acting on Hyundai's instruction, St. Charles Hyundai removed the fuse to cut power to the tow wiring harness module, thus disabling the Williams Vehicle's ability to tow.

34.    With the fuse removed and no repair from Hyundai, Mr. Williams lost the ability to tow his boat, which he previously took on fishing trips about every other weekend, leaving him to occasionally ask friends to tow it for him.

35.    Over the year following the disabling of Williams Vehicle's towing ability by St. Charles Hyundai, Mr. Williams regularly called St. Charles Hyundai to

Case No.                                                    CLASS ACTION COMPLAINT

inquire about a Tow Harness Module Defect repair.  However, St. Charles Hyundai consistently responded that Hyundai had no solution available.

36.    On February 15, 2024, Mr. Williams, through her counsel, sent a letter to Hyundai, advising it that the Williams Vehicle suffered from the Tow Harness Module Defect and that Mr. Willaims was denied a repair under Hyundai's warranty.

37.    Eventually, with the Defect in the Williams Vehicle still unrepaired, Mr. Williams purchased a truck in the Spring of 2024 to tow his boat.

## **FACTUAL ALLEGATIONS**
**The Tow Harness Module Defect**

38.    Hyundai has sold tens of thousands of 2020-2022 Class Vehicles across Texas and Missouri.

39.    The Class Vehicles represent the first generation of the Palisade model line of vehicles, which are also available with Hyundai's optional towing package.

40.    In its product brochure and on its website, Hyundai touts the Class Vehicles' 5,000 pounds towing capacity and a trailer sway control feature as standard.[3]

41.    To take advantage of the Class Vehicles' towing ability, Hyundai sells a towing package at a cost of about $475 to $750 that can be ordered with the vehicle from the factory, added at the port, or added at the Hyundai authorized dealership.

---

[3] https://secure.viewer.zmags.com/publication/d49ef13d#/d49ef13d/2 (Last visited Jun. 13, 2023).

Case No.                                                                                   CLASS ACTION COMPLAINT

42.     A tow wiring harness module is necessary to operate the trailer's turn signals and brake lights.

43.     This added ability to tow was the reason why Plaintiffs and many Class Vehicles' owners opted to buy or lease the Class Vehicles over the competition and paid money for Hyundai's optional tow hitch and a tow wiring harness module accessories.

44.     Hyundai states that approximately 40,480 tow hitch accessory wiring harness assemblies were included with an accessory tow hitch sold as a service part for use in model year 2020-2022 Palisade vehicles in the U.S.

45.     However, despite Hyundai's claims that the Class Vehicles are fit to tow, the Class Vehicles suffer from a dangerous manufacturing and/or design defect with the vehicles' tow wiring harness modules that cause an electrical short circuit, increasing the risk of a fire while driving or while the vehicle is parked with the ignition off.

46.     On March 1, 2021, Hyundai Auto Canada Corporation ("HACC"), a sister company of Hyundai Motor America, received a report from a dealership regarding a model year 2020 Palisade vehicle that experienced a fire originating in the bumper area while parked.

Case No.

CLASS ACTION COMPLAINT

47.    Then, on April 19, 2021, HACC received a report from a dealership regarding a model year 2020 Palisade vehicle equipped with a trailer accessory tow wiring harness module that had melted.

48.    On December 3, 2021, Hyundai learned of a Palisade vehicle in the U.S. whose trailer accessory tow wiring harness module melted.

49.    On April 4, 2022, HACC received notice of a potential third fire incident in Canada involving a model year 2021 Palisade, and on April 12, 2022, HACC received notice of a potential fourth fire incident involving a model year 2020 Palisade.

50.    Subsequently, in the Summer of 2022, Hyundai became aware of eight other incidents where tow wiring harness modules melted in the vehicles sold in the U.S.

51.    As a result of Hyundai's investigation of these incidents, on August 22, 2022, Hyundai recalled the Class Vehicles.

52.    The recall affected 245,030 Class Vehicles.

53.    In the recall, which NHTSA assigned a recall number 22V-633, Hyundai states that in Class Vehicles "equipped with a tow hitch harness installed as original equipment, or purchased as an accessory through a Hyundai dealership," "[d]ebris and moisture accumulation on the tow hitch harness module printed circuit board (PCB) may cause an electrical short, which can result in a fire."

Case No.                                                                    CLASS ACTION COMPLAINT

54.    Specifically, Hyundai said a potential electrical shock could result from certain environmental contaminants or moisture that got inside the tow hitch harness modules as a result of the manufacturing processes.

55.    Hyundai acknowledged that it could not repair the defect and, as an interim measure, instructed owners to park their vehicles outside and away from structures.

56.    In addition, Hyundai instructed owners to take their vehicles to Hyundai dealers who would remove the fuse to cut the power to the tow wiring harness module.

57.    With the fuse removed and ability to tow eliminated, Plaintiffs and other consumers repeatedly requested a repair from Hyundai, but in response were told no repairs were available.

58.    Finally, more than eight months later, in May 2023, Hyundai issued a proposed repair attempt to its dealers to repair the Defect.  Specifically, in Technical Service Bulletin 23-01-044H, Hyundai instructed its dealers to inspect the Class Vehicles and replace the whole tow wiring harness, or only its pigtail portion, and to replace the original fuse with a new 15 amp fuse.

59.    In addition, in late May 2023, Hyundai started mailing the Class Vehicles' owners and lessees letters, informing them that a permanent fix was

Case No.                                                        CLASS ACTION COMPLAINT

allegedly available and inviting them to schedule a dealer appointment to obtain a repair.

60.     However, other than offering to attempt to repair the defect by replacing the aforementioned harness and fuse, Hyundai offered the Class Vehicles' owners and lessees no compensation for their months-long loss of ability to tow and no compensation for the diminished value of their vehicles at the time of sale due to the defect.

61.     Moreover, following the May 2023 recall notice, Class Vehicles' owners have reported that Hyundai dealers still do not have replacement parts available and thus cannot attempt the proposed repair attempt.

62.     The Tow Hitch Module Defect substantially impaired the Class Vehicles' value as it rendered the Class Vehicles useless for towing purposes, the very reason Plaintiffs and other Class Owners chose the Class Vehicles over competition.

63.     Further, the vehicles were worth less money at the time of sale and thereafter because they suffer from an unacceptably high risk of catching on fire and could not safely be parked indoors.

**Consumer Complaints of the Defect**

64.     By Hyundai's own admission, over 40,000 Class Vehicles were affected by the Tow Harness Module Defect.  Given how widespread the issue is, Class Vehicles' owners have been complaining, and posted such complaints online, about

Case No.                                                                      CLASS ACTION COMPLAINT

their loss of ability to tow as soon as the recall, and lack of a fix, were announced on August 22, 2022.

65.    For instance, on www.palisadeforum.com, a Hyundai Palisade vehicle enthusiast website, a Class Vehicle owner posted on August 23, 2022, expressing his frustration that with a fuse removed, the trailer lights would stop operating.[4]  Other Class Vehicle owners commented that until the Hyundai dealership removes the fuse, they will heed the warning that the Tow Harness Module Defect poses a fire risk and will park their vehicles outside; another owner then responded he was reluctant to park outside due to the risk of the catalytic converter theft,[5] followed by another owner who complained parking outside was not possible for him as he lived in a large city with indoor parking and without street parking available.[6]

66.    In response to the above owners' concerns of Class Vehicles being susceptible to catching fire, another owner shared that the tow wiring harness module in his car actually did catch on fire: "I had this exact issue happen to my Palisade, replaced the fuse, lights started to work, then my wiring harness started smoking and caught on fire. The dealership tried to blame me for this issue, glad to see there's a

---

[4] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/post-52980 (last visited Jun. 6, 2023).
[5] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/ (last visited Jun. 6, 2023).
[6] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/post-53123 (last visited Jun. 6, 2023).

Case No.                                                                    CLASS ACTION COMPLAINT

recall on this."[7]

67.     Moreover, the Hyundai's August 22, 2022 temporary fix was seemingly not limited to owners whose cars were equipped with Hyundai's optional towing package.  A Class Vehicle owner reported the Hyundai dealership removed the fuse in his car too, even though his vehicle was equipped with an after-market tow hitch and tow hitch wiring harness, thus leaving him without the ability to tow.[8] [9]  When another owner with an after-market tow set-up protested fuse removal, a Hyundai dealer threatened that his warranty will be voided unless the fuse was removed.[10]

68.     Similarly, other Class Vehicles' owners voiced their frustration for their loss of ability to tow, which was a big selling point in their decision to buy a Palisade.[11]

69.     Some Class Vehicle Owners, left with no repair remedy, were forced to pay for an after-market solution.[12]

70.     Similarly, on Facebook, a Class Vehicle owner has been complaining

---

[7] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/post-53031 (last visited Jun. 6, 2023).

[8] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/post-58095 (last visited Jun. 6, 2023).

[9] https://www.palisadeforum.com/threads/safety-recall-on-trailer-hitch-wiring-harness.6135/post-57804 (last visited Jun. 6, 2023).

[10] https://www.palisadeforum.com/threads/recall-of-2020-2022-palisade-telluride-announcement.5725/post-58336 (last visited Jun. 6, 2023).

[11] https://www.palisadeforum.com/threads/towing-electrical-fires.6113/ (last visited Jun. 6, 2023).

[12] https://www.palisadeforum.com/threads/towing-electrical-fires.6113/post-57572 (last visited Jun. 6, 2023); https://www.palisadeforum.com/threads/palisade-trailer-hitch-recall.6437/post-61678 (last visited Jun. 6, 2023).

Case No.                                                         CLASS ACTION COMPLAINT

about spending over $50,000 on the Palisade and not being able to tow his camper due to the Tow Harness Module Defect.[13]  Other Class Vehicle owners voiced the same frustration.[14] [15] [16]

71.    Further, the owners of the Class Vehicles voiced their complaints concerning the Tow Harness Module Defect with NHTSA.  Upon information and belief, Hyundai actively monitored these complaints during the relevant time period, demonstrating that Hyundai has known about Class Vehicles owners' loss of ability to tow at all relevant times:

- NHTSA Complaint No. 1835292, August 24, 2022 (2020 Hyundai Palisade): "Have a 2020 Hyundai Palisade, last 4 of vin LU 149 938. The NHTSA.gov website under consumer alert important Hyundai and Kia recall says 'as an interim repair, Hyundai dealers will inspect the tow hitch module and remove the fuse, as necessary.' The neither Hyundai USA nor the local dealer (Bill Marsh Hyundai, Traverse City, MI) know anything about the interim repair (inspection & fuse removal) mentioned in the NHTSA consumer alert.  What's going on?  Is the NHTSA website incorrect?  And how do I force the dealer to inspect my vehicle?"

- NHTSA Complaint No. 1851720, November 7, 2022 (2022 Hyundai Palisade): "This vehicle was recalled due to an electrical issue with the towing wiring harness. I took it in to a dealership for the repair and over a month later, learned it wasn't actually repaired. They simply took the fuse out and reported it to the manufacturer. I wasn't told this wasn't being repaired or that the wiring was being disabled. I towed a small boat a few weeks later and as it got dark, figured out the lights weren't working. I called

---

[13] https://www.facebook.com/groups/palisadeowners/permalink/1919818071728503/ (last visited Jun. 9, 2023).
[14] https://www.facebook.com/groups/palisadeowners/permalink/1888364084873902/ (last visited Jun. 9, 2023).
[15] https://www.facebook.com/groups/palisadeowners/permalink/1898597190517258/ (last visited Jun. 9, 2023).
[16] https://www.facebook.com/groups/palisadeowners/permalink/1746567499053562/ (last visited Jun. 9, 2023).

Case No.                                                                                    CLASS ACTION COMPLAINT

them today to let them know the repair wasn't done and this was when i learned they didn't actually repair it.   I also was not notified by the manufacturer of the recall. I was told about it by a relative. When i contacted them, they said they weren't responsible for notifying me."

- NHTSA Complaint No. 1854453, November 21, 2022 (2022 Hyundai Palisade): "The contact owns a 2022 Hyundai Palisade. The contact stated that upon attaching the trailer to the tow hitch of the vehicle, the tow hitch failed to operate as needed as there was no indicator lights that the trailer was hitched to the vehicle. The contact stated that he replaced the electrical wiring of the trailer himself; however, the failure persisted. The dealer was notified of the failure and informed the contact that the VIN was included in NHTSA Campaign Number: 22V633000 (Trailer Hitches). The dealer removed the tow hitch fuse as an interim repair. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue but provided no assistance. The vehicle was not repaired. The failure mileage was approximately 8,500. Parts distribution disconnect."

- NHTSA Complaint No. 1854694, November 22, 2022 (2020 Hyundai Palisade): "The contact owns a 2020 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 22V633000 (Trailer Hitches) however, the part to do the recall repair was not yet available. The local dealer was contacted and removed the tow hitch fuse per the manufacturer's instructions. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was not made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect."

- NHTSA Complaint No. 1860363, December 12, 2022 (2020 Hyundai Palisade): "The contact owns a 2020 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 22V633000 (Trailer Hitches) however, the part to do the recall repair was unavailable. The contact had taken the vehicle to the dealer who performed a temporary fix by removing the fuse to the tow hitch module, rendering the tow hitch inoperable. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect."

- NHTSA Complaint No. 1869844, February 2, 2023 (2020 Hyundai Palisade): "We received a Safety Recall for the Tow Hitch on our 2020

CLASS ACTION COMPLAINT

Hyundai Palisade. We took the vehicle to the dealership last summer and they removed the fuse and therefore, disabled the towing ability of the vehicle. It has been over 5 months since this was done. Hyundai still does not have a solution for the Safety Recall. What can be done to bring a resolution for this Safety Recall?"

- NHTSA Complaint No. 1872920, February 15, 2023 (2021 Hyundai Palisade): "The contact owns a 2021 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 22V633000 (Trailer Hitches) however, the part to do the recall repair was unavailable. The contact stated that the dealer had performed an interim repair. The contact stated that the dealer had inspected the tow hitch module and removed the fuse and disabled the trailer hitch operation. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The final remedy was not yet available. The manufacturer was made aware of the issue. The contact had not experienced a failure. The VIN tool showed no open recall."

- NHTSA Complaint No. 1875292, February 24, 2023 (2021 Hyundai Palisade): "My local dealer pulled the 40 amp fuse the vehicle's trailer wiring harness because of NHSTA issue: OMB Control No.: 2127-0004 / Part 573 Safety Recall Report 22V-633. The fuse was pulled in August 2022 (6 months ago), I received a mailed notification from Hyundai, and then they marked the recall as being complete in their website. To date, I have not received any information from Hyundai about the replacement part and we have not been able to use the vehicle for towing in 6 months. I called Hyundai customer support today, and they still do not know a date when the remedy part will become available. We bought this vehicle for vacations to tow our travel trailer. If this vehicle cannot safely tow a trailer for the foreseeable future, I would like compensation and/or the option to sell the vehicle back to Hyundai. What are my options?"

- NHTSA Complaint No. 1875833, February 27, 2023 (2022 Hyundai Palisade): "The contact owns a 2022 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 22V633000 (Trailer Hitches) however, the part to do the recall repair was unavailable. The vehicle was taken to a local dealer, where the interim repair to remove the fuse to the tow hitch module was completed. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was contacted but was unable to confirm when parts would become available. The contact had not experienced a failure. Parts distribution

21

disconnect.  The contact stated that no reasonable repair has been provided yet. The only advice given was to park car further away from the house."

- NHTSA Complaint No. 1880272, March 22, 2023 (2022 Hyundai Palisade): "The contact owns a 2022 Hyundai Palisade. The contact was informed of NHTSA Campaign Number: 21V633000 (Trailer Hitches). The dealer was notified about the recall and an appointment was made to have the wiring from the trailer hitch removed. The dealer confirmed that parts to repair the tow hitch wiring were not yet available. The manufacturer had been notified of the recall. The contact stated that the manufacturer had exceeded a reasonable amount of time for the repair. The contact had not experienced a failure. Parts distribution disconnect."

- NHTSA Complaint No. 1881517, March 22, 2023 (2022 Hyundai Palisade): "The contact owns a 2022 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 22V633000 (Trailer Hitches) however, the part to do the recall repair was unavailable. The vehicle was taken to a local dealer for the interim repair, where the tow hitch fuse was removed. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure. Parts distribution disconnect."

- NHTSA Complaint No. 1886599/1886600, April 12, 2023 (2021 Hyundai Palisade): "The contact owns 2021 Hyundai Palisade. The contact received notification of NHTSA Campaign Number: 23V180000 (Visibility, Wiper) and 22V633000 (Trailer Hitches). The contact stated that the fuse was removed from the tow hitch, rendering the tow hitch inoperable. The vehicle was not repaired. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was notified of the failure but declined to provide assistance. The contact had not experienced a failure. Parts distribution disconnect."

- NHTSA Complaint No. 1890865, April 30, 2023 (2022 Hyundai Palisade): "Hyundai issued a recall in August 2022 for a potential fire hazard involving their vehicles equipped with a towing package.  Their temporary solution was to remove a safety fuse from the system, thus rendering the towing capability unusable.  I took my vehicle to the Hyundai dealership to have the recall addressed.  The previously mentioned temporary solution was applied. There have been no updates and no permanent solutions applied to this issue. I contacted my dealership and was told that the dealership is not updated by

Case No.                                                    CLASS ACTION COMPLAINT

Hyundai regarding a permanent solution.  It has been 8 months since the recall was issued with no permanent solution offered."

- NHTSA Complaint No. 1892423, May 6, 2023 (2021 Hyundai Palisade): "Hyundai issued a safety recall notice on the tow harness. The harness may catch fire during use or when the car is off and parked.  Don't park the car in a garage until the fuse is pulled. We found out in august 2022 during visit to dealership. The interim fix is to remove the fuse for the tow harness. We are still waiting on a fix. We bought the car to tow a utility trailer and we can't. We received written notice later that year.  Calls to Hyundai customer care have no answer, the dealer has no answer and we have a car we cannot use.  What recourse do we have?"

72.     Although Hyundai was aware of the widespread nature of the Tow Harness Module Defect in the Class Vehicles, and that removal of the fuse, without an actual fix, left the Class Vehicles' owners without the ability to tow, which was a feature they bargained for when they agreed to purchase or lease their cars, Hyundai has failed to take adequate steps to provide Class Vehicles' owners relief.

73.     Hyundai has deprived Class Members of the benefit of their bargain and has caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Tow Harness Module Defect contained in the Class Vehicles.

74.     Hyundai has not offered Class Vehicle owners compensation for the diminished value of the vehicles at the time of sale due to the defect and unacceptably high risk of catching on fire, or for their eight-months long inability to tow.  Nor has Hyundai offered to reimburse Class Vehicle owners and leaseholders for out-of-pocket costs related to the Tow Harness Module Defect.

Case No.                                                          CLASS ACTION COMPLAINT

75.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

76.     As a result of the Tow Harness Module Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's tow hitch wiring harness module is not defective and will not catch fire.  They expect that they can safely park the vehicles indoors.  Plaintiffs and Class Members further expect and assume that Hyundai will not sell or lease vehicles with known safety defects, such as the Tow Harness Module Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Hyundai would fail to disclose the Tow Harness Module Defect to them, and then refuse to remedy the defect under Hyundai's warranty within a reasonable period of time.

## CLASS ACTION ALLEGATIONS
### A.  The Class

77.     Plaintiffs bring this action on her own behalf, and on behalf of the following classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

**Texas Class:** All persons or entities who purchased or leased any 2020-2022 Hyundai Palisade vehicle in the State of Texas (the "Texas Class")

**Missouri Class:** All persons or entities who purchased or leased any 2020-2022 Hyundai Palisade vehicle in the State of Missouri (the "Missouri Class")

78.    Hyundai and its employees or agents are excluded from the Class.

### B.  **Numerosity**

79.    Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased throughout Texas and Missouri.

### C.  **Common Questions of Law and Fact**

80.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Tow Harness Module Defect;

b.    whether the Tow Harness Module Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Tow Harness Module Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' tow wiring harness module constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of

the Class Vehicles' tow wiring harness module to Plaintiff and the other Class Members;

f.      whether Defendant knew or reasonably should have known of the Tow Harness Module Defect contained in the Class Vehicles before they sold or leased them to Class Members; and

g.      Whether Defendant breached its express warranty and the implied warranty of merchantability.

### D.  **Typicality**

81.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased one of the defective Class Vehicles, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of herself and all absent Class members.

### E.  **Protecting the Interests of the Class Members**

82.    Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

### F.  **Proceeding Via Class Action is Superior and Advisable**

83.    A class action is the superior method for the fair and efficient

Case No.                                                    CLASS ACTION COMPLAINT

adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

84.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff Bal on behalf of the Texas Class and**
**Plaintiff Williams on behalf of the Missouri Class)**

85.    Plaintiffs incorporate by reference all allegations contained in this

Case No.                                                                     CLASS ACTION COMPLAINT

Complaint as though fully stated herein.

86.    As a result of Hyundai's sale of its optional tow hitch and tow wiring harness module accessories to Class Vehicles' owners, and Hyundai subsequently disabling the Class Vehicles' ability to tow, Hyundai obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

87.    Hyundai appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Tow Harness Module Defect, paid a higher price for their vehicles which actually had lower values.  Hyundai also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

88.    It would be inequitable and unjust for Hyundai to retain these wrongfully obtained profits.

89.    Hyundai's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

90.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

91.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

Case No.                                                                CLASS ACTION COMPLAINT

92.    Additionally, Plaintiffs seek injunctive relief, enjoining Defendant from further distribution, sales, and lease practices with respect to Class Vehicles; enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class members with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**SECOND CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability Pursuant to the**
**Tex. Bus. & Com. Code § 2.314**
**(Plaintiff Bal on behalf of the Texas Class)**

93.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

94.    Defendant is a merchant with respect to motor vehicles.

95.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Bal and the Texas Class Members.

96.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

97.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the Tow Harness Module Defect referenced herein and

thus were not in merchantable condition when Plaintiff Bal and the Texas Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles were purchased or leased to be used.  Specifically, the Class Vehicles suffered from an unacceptably high risk of catching on fire and were not fit for towing in a reasonably reliable and safe manner because the Class Vehicles suffer from a Tow Harness Module Defect that makes towing with non-working brake lights, turn signals, and auxiliary trailer brakes dangerous and illegal.

98.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313**
**(Plaintiff Bal on behalf of the Texas Class)**

99.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

100.   In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Bal and the Texas Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 5 years or 60,000 miles in service, whichever comes first.

30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

101.   Plaintiff Bal and the Texas Class Members relied on Defendant's warranty when they agreed to purchase or lease the Class Vehicles, and Defendant's warranty was part of the basis of the bargain.

102.   Plaintiff Bal and the Texas Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Tow Harness Module Defect under the vehicle's warranty within a reasonable period of time as described herein.

103.   Plaintiff Bal and the Texas Class Members have given Defendant reasonable opportunity to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

104.   As a result of said nonconformities, Plaintiff Bal and the Texas Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

105.   Plaintiff Bal and the Texas Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Bal and the Texas Class Members' acceptance of the Class Vehicles.

106.   Plaintiff Bal and the Texas Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they

Case No.

CLASS ACTION COMPLAINT

known, prior to their respective time of purchase or lease, that Class Vehicles contained the Tow Harness Module Defect.

107.   As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff Bal and the Texas Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## FOURTH CAUSE OF ACTION
### Violation of the Texas Deceptive Practices Act,
### Tex. Bus. & Com. Code § 17.41, *et seq.*
### (Plaintiff Bal on behalf of the Texas Class)

108.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

109.   Plaintiff Bal and the Texas Class Members are each "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they sought or acquired their vehicle by purchase.

110.   Plaintiff Bal's vehicle and the Texas Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1) because they are tangible chattel that were purchased or leased for use.

111.   Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

Case No.                                                    CLASS ACTION COMPLAINT

112.    At all relevant times, Defendant has engaged in "Trade" and "Commerce" as defined by Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

113.    Texas's Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*, prohibits and declares unlawful false, misleading, or deceptive business practices. in the conduct of any trade or commerce.

114.    Specifically, Tex. Bus. & Com. Code § 17.50(a)(2) provides that a "consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . (2) breach of an express or implied warranty."

115.    Defendant violated the DTPA by breaching its express and implied warranties. Defendant's breach of the express warranty and implied warranty of merchantability set forth above was a producing cause of economic damages sustained by Plaintiff Bal and the Texas Class Members.

116.    The Class Vehicles' Tow Harness Module Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road, because the Class Vehicles suffered from an unacceptably high risk of catching on fire and were not fit for towing in a reasonably reliable and safe manner because

Case No.                                                                    CLASS ACTION COMPLAINT

the Class Vehicles suffer from a Tow Harness Module Defect that makes towing with non-working brake lights, turn signals, and auxiliary trailer brakes dangerous and illegal.

117.   As a result of Defendant's acts, Plaintiff Bal and Texas Class Members have suffered damages in that they are left with vehicles of diminished value and utility because of the Tow Harness Module Defect, which continues to pose a serious safety risk.

118.   Moreover, Defendant's sale and lease of the defective Class Vehicles and failure to repair the Tow Harness Module Defect constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff Bal and the Texas Class, that conduct took advantage of Plaintiff Bal and Texas Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff Bal and the Texas Class Members.

119.   Plaintiff Bal and the other Texas Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Tow Harness Module Defect, which is the reasonable and objective consumer expectation for vehicles.

Case No.                                                    CLASS ACTION COMPLAINT

120.   As a result of Defendant's misconduct, Plaintiff Bal and Texas Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement, and are worth less money because of the Tow Harness Module Defect.

121.   Plaintiff Bal has provided adequate notice to Defendant.

### FIFTH CAUSE OF ACTION
**Breach of the Implied Warranty of Merchantability Pursuant to the
MO Rev Stat § 448.4-114
(Plaintiff Williams on behalf of the Missouri Class)**

122.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

123.   Defendant is a merchant with respect to motor vehicles.

124.   The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Williams and the Missouri Class Members.

125.   An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

126.   Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the Tow Harness Module Defect referenced herein and thus were not in merchantable condition when Plaintiff Williams and the Missouri Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles were purchased or leased to be used.  Specifically, the Class Vehicles suffered from an

unacceptably high risk of catching on fire and were not fit for towing in a reasonably

reliable and safe manner because the Class Vehicles suffer from a Tow Harness

Module Defect that makes towing with non-working brake lights, turn signals, and

auxiliary trailer brakes dangerous and illegal.

127.   As a result of Defendant's breach of the applicable implied warranties,

owners and lessees of the Class Vehicles suffered an ascertainable loss of money,

property, and/or value of their Class Vehicles.  Defendant's actions, as complained of

herein, breached the implied warranty that the Class Vehicles were of merchantable

quality and fit for such use.

### SIXTH CAUSE OF ACTION
### Breach of Express Warranty under MO Rev Stat § 448.4-113
### (Plaintiff Williams on behalf of the Missouri Class)

128.   Plaintiffs incorporate by reference all allegations contained in this

Complaint as though fully stated herein.

129.   In connection with the sale or lease of the Class Vehicles, Defendant

provided Plaintiff Williams and the Missouri Class Members with its New Vehicle

Limited Warranty where it promised to repair defective parts within 5 years or 60,000

miles in service, whichever comes first.

130.   Plaintiff Williams and the Missouri Class Members relied on Defendant's

warranty when they agreed to purchase or lease the Class Vehicles, and Defendant's

warranty was part of the basis of the bargain.

Case No.                                                                    CLASS ACTION COMPLAINT

131.    Plaintiff Williams and the Missouri Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Tow Harness Module Defect under the vehicle's warranty within a reasonable period of time as described herein.

132.    Plaintiff Williams and the Missouri Class Members have given Defendant reasonable opportunity to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

133.    As a result of said nonconformities, Plaintiff Williams and the Missouri Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

134.    Plaintiff Williams and the Missouri Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Williams and the Missouri Class Members' acceptance of the Class Vehicles.

135.    Plaintiff Williams and the Missouri Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Tow Harness Module Defect.

136.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff Williams and the

Case No.                                                                CLASS ACTION COMPLAINT

Missouri Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

a. An order certifying the proposed Classes, designating Plaintiffs as named representative of the Texas and Missouri Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. Reasonable attorneys' fees and costs;

Case No.                                                                                    CLASS ACTION COMPLAINT

f.  Pre-judgment and post-judgment interest, as provided by law;

g.  Plaintiffs demand that Defendant repairs all Class Vehicles; and

h.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  July 30, 2024

By:   */s/   Trinette G. Kent*
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiff*

Case No.                                                    CLASS ACTION COMPLAINT